UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

IN THE MATTER OF

KARINA ZHINA-ARPI
Material Witness

Case No. 3:22-mj-1152-LLL

## APPLICATION FOR ISSUANCE OF
## MATERIAL WITNESS ARREST WARRANT

The United States of America, by the undersigned Assistant United States Attorney, hereby applies pursuant to 18 U.S.C. § 3144 for issuance of a warrant for the arrest of KARINA ZHINA-ARPI as a material witness in the criminal proceedings of <u>United States v. Renato Santos-Herrera</u>, Case No. 3:22-mj-1150-LLL. For the reasons set forth in the attached affidavit, the testimony of KARINA ZHINA-ARPI is material in the criminal proceedings against Renato Santos-Herrera and it would be impracticable to secure her presence by subpoena.

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By: /s/ *Kevin C. Frein*
KEVIN C. FREIN
Assistant United States Attorney
Florida Bar No. 0149144
300 N. Hogan Street, Suite 700
Jacksonville, FL 32202-4270
Telephone: (904) 301-6300
Facsimile: (904) 301-6310
E-mail:    kevin.frein@usdoj.gov

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT
## AND MATERIAL WITNESS WARRANTS

I, Joseas R. Montes, being a duly sworn and appointed Border Patrol Agent for the United States Department of Homeland Security, Customs and Border Protection, United States Border Patrol, hereby make the following statement in support of the attached criminal complaint:

1. Your affiant has been a Border Patrol Agent for over fifteen years. Your affiant has training and experience in the enforcement of the immigration and nationality laws of the United States.

2. The statements contained in this affidavit are based on my personal experience and observations, as well as the experiences and observations of fellow Border Patrol Agents as they have described them to me. This affidavit does not contain every fact know to me regarding the investigation, but sets forth sufficient facts in support of the complaint to establish probable cause to believe that on March 29, 2022, SANTOS-Herrera, Renato, a Resident Alien of the United States, transported aliens unlawfully present in the United States, for the purpose of private financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (a)(1)(B)(i).

3. This affidavit also sets forth probable cause to believe that the testimony of BENITEZ-Coronel, Jorge a citizen of Ecuador, ZHINA-Arpi, Karina a citizen of Ecuador, MORALES-Hernandez, Limbano a citizen of Mexico, and MORALES-

Morales, Daniel a citizen of Mexico, is material in the criminal proceedings against SANTOS-Herrera, Renato and that it would be impracticable to secure their presence by subpoena. Therefore, material witness warrants should be issued to secure their presence, pursuant to Title 18, United States Code, Section 3144.

4. From training and experience, your affiant knows that criminal alien smuggling operations transport illegal aliens unlawfully in the United States from the border with Mexico to staging cities in California, Arizona, New Mexico, and Texas. After they arrive in these cities, alien smugglers load the illegal aliens into vehicles and transport them to metropolitan areas in the United States to look for better job opportunities. Your affiant knows that once the smuggled illegal aliens are in the country, transportation loads originate within these cities in the United States to move illegal aliens around the country. The smuggled illegal aliens are primarily from Mexico, Guatemala, Honduras, and El Salvador. Smuggling cartels are usually owned by Mexican nationals and are operated from Mexico and within the United States. The smuggling cartels primarily use Hispanic males from Mexico or the United States to drive the smuggling vehicles because they speak Spanish and are familiar with Latin American customs and cultures. Interstate 10 (I-10) is a corridor often used by alien smugglers who work for smuggling cartels because it is a major highway that crosses the southern United States and passes through the southern parts of Texas, New Mexico, Arizona, and California.



5. On March 29, 2022, at approximately 4:00 p.m., your affiant, Supervisory Border Patrol Agent (SBPA) Joseas R. Montes, received a phone call from St. Johns County Sheriff Deputy Almuger. Deputy Almuger requested assistance regarding a potential smuggling case on I-95 south at MM 310. Border Patrol Agent (BPA) Matthew Zetts and your affiant responded. Both agents arrived at the location at approximately 5:00 pm. Deputy Almuger stated in substance that he pulled the vehicle over for speeding. He was unable to effectively communicate with the passengers; due to all of the passengers only speaking the Spanish language. He asked the driver if he knew the passengers, to which the driver responded in English stating "no". Deputy Almuger stated from that point forward the driver did not respond to any further questions in English and only spoke Spanish. Deputy Almuger placed the driver in his patrol vehicle. The four passengers were seated on the grass outside the vehicle.

6. Your affiant and Agent Zetts approached the four passengers. We identified ourselves as U.S. Border Patrol Agents and questioned them as to their citizenship. Two passengers, later identified as BENITEZ-Coronel, Jorge (DOB: 03/▮, A# 213-648-964) and ZHINA-Arpi, Karina (DOB: 01/▮ A# 216-856-116), stated they were citizens of Ecuador. The two other passengers, later identified as MORALES-Hernandez, Limbano (DOB: 07/▮, A# 213-648-966) and MORALES-Morales, Daniel (DOB: 05/▮, A# 213-648-965), stated they were citizens of Mexico. All four passengers stated they were not in possession

3

of any immigration documents that would allow them to enter, pass through nor remain in the United States legally.

7. Your affiant and Agent Zetts approached the driver of the vehicle and in the Spanish language identified ourselves as U.S. Border Patrol Agents. The driver, later identified as SANTOS-Herrera, Renato (DOB: 11/, A# 206-495-681), was then questioned as to his citizenship. He claimed to have an approved asylum case and claimed to be a Lawful Admitted Permanent Resident (LAPR). I questioned the driver if he knew the passengers, to which he stated he did not. I then stopped questioning Mr. SANTOS-Herrera and read him his *Miranda* rights at 7:16 pm, witnessed by Agent Zetts. Mr. SANTOS-Herrera invoked his rights. He was subsequently placed under arrest for a violation of Title 8, United States Code, 1324. All individuals were transported to the Jacksonville Border Patrol station for further processing.

8. At the Jacksonville Border Patrol station, a check of records revealed that Mr. SANTOS-Herrera was granted credible fear and given LAPR status. It was further determined the four passengers do not have prior immigration removals. All four passengers stated in substance that they entered the United States illegally through Del Rio, Texas, at an approximate date and time of March 15, 2022, at 6:00 pm. As outlined below, all four passengers admitted to making arrangements to be smuggled into the United States.

9. During an interview Mr. MORALES-Hernandez stated in substance that he is a citizen of Mexico and does not possess immigration documents that would allow him to enter, pass through nor remain in the United States legally. He made arrangements to be smuggled into the United Stated in Piedras Negras, Mexico about a month ago with an unknown smuggler. He was charged $5,000.00 (USD) to be smuggled into the United States from Mexico to West Palm, Florida. He crossed into the United States approximately 15 days ago. He was taken to Austin, Texas, by car to an unknown house for approximately two days. He was then transported to Houston, Texas where he spent two days. In Houston, Texas he was taken to a gas station where he was told to get in the car of the driver (SANTOS-Herrera). He stated that one of his family members were going to pay the driver once he arrived at his final destination in West Palm, Florida. He stated that he did not have to pay any money during the trip because the driver paid for all of the food and trip expenses. He stated that was part of his arrangements. He stated that the driver was the only person who drove the car. They stayed in the same car with the same driver since they departed Houston, Texas. He stated that they slept on the car at gas stations during the trip.

10. During an interview Mr. MORALES-Morales stated that he is a citizen of Mexico and does not possess immigration documents that would allow him to enter, pass through nor remain in the United States legally. He is traveling with Mr. MORALES-Hernandez. His uncle made arrangements for him to be smuggled into

the United States from Mexico to West Palm Beach, Florida for $6,500.00 (USD). He entered the United States through Piedras Negras, Mexico approximately 20 days ago. He was taken to either Austin or Houston, Texas. Prior to getting in the driver's (SANTOS-Herrera) car, they were moved in different cars around the city. He never spoke with the driver. He was on the road with the driver for three days until they were stopped by a policeman. He initially sat in the back seat of the car but at some point in the trip, he sat in the front passenger seat. He stated that the driver never spoke with him, nor did he try to make conversation. The driver paid for all of the expenses during the trip, but he does not know if that was part of the arrangements made by his uncle. The only thing the driver said to them other than offering food was to be relaxed.

11. During an interview Mrs. ZHINA-Arpi stated in substance that she is a citizen of Ecuador and does not possess immigration documents that would allow her to enter, pass through nor remain in the United States legally. She made arrangements to be smuggled into the United Stated while in Ecuador approximately one month ago. The smuggler guided her by phone from Ecuador to Houston, Texas. She paid $1,640.00 (USD) in Ecuador, $1,500.00 in Guatemala, $3,500.00 when she entered the Mexican border, $5,500.00 upon arriving in Piedras Negras, Mexico, $7,000.00 once they arrived in San Antonio, Texas, and $1,700.00 once they arrived in Houston, Texas, by electronic deposit.

12. Mrs. ZHINA-Arpi traveled with her partner, BENITEZ-Coronel, Jorge. Once they arrived in Piedras Negras, Mexico a person transported them to the river near the Mexico/United States border. They met another person who crossed them into the United States approximately 15 days ago through Del Rio, Texas. The guide took them to an unknown house where they spent a day or so. From that house the smugglers took her to San Antonio, Texas where she stayed for two days. She was then transported to a hotel in Houston, Texas. She was then transported to an unknown gas station by car. At the gas station she was then told to get into a different car that would take them to their final destination in Florida. They traveled in the car with the driver (SANTOS-Herrera) for three days. She did not pay the driver because on her last payment/electronic deposit in Houston, Texas, she was told that the transportation was part of the payment. They did not have to pay for the trip, the driver paid for all of the expenses during the trip. They rested and slept at gas stations when they were tired.

13. During an interview Mr. BENITEZ-Coronel stated in substance that he is a citizen of Ecuador and does not possess immigration documents that would allow him to enter, pass through nor remain in the United States legally. He made arrangements to be smuggled into the United Stated in Ecuador on March 3, 2022. He was charged $18,000.00 (USD) to be smuggled into the United States from Ecuador to Florida. He paid a total of $22,000.00 for the entire trip. He was given the smuggler's contact information by some friends that live in the United States.

The smuggler guided him and Mrs. ZHINA-Arpi by phone from Ecuador to Houston, Texas.

14. They arrived in Piedras Negras, Mexico where they crossed into the United States approximately one month ago. They were taken to an abandoned house in Texas. They were moved to a different unknown location where they stayed for two days. After two days, they were transported by vehicle to a hotel in Houston, Texas. From the hotel they were taken by car to an unknown location where they called an uber for them. He does not know who called the uber or who the uber driver was. He stated that the uber driver (SANTOS-Herrera) was the only person who drove the vehicle from Houston, Texas to Florida, where they were pulled over by an officer. They drove for three days, and they slept at gas stations. The driver paid for all of the expenses during the trip. Mr. BENITEZ-Coronel stated that all of his expenses were included in his smuggling arrangement. He does not know if the driver knew they were illegal because the driver only spoke to them to give them food or tell them they were going to rest. He did not spend any money during the trip because everything was included in his trip.

15. Because MORALES-Hernandez, Limbano, MORALES-Morales, Daniel, BENITEZ-Coronel, Jorge, and ZHINA-Arpi, Karina, are citizens of Mexico and Ecuador, respectively, who are illegally present in the United States, they will be either deported or released pending immigration proceedings. In either event, if they are not arrested as material witnesses, it is likely that they could not or would not

appear to testify in the criminal case against SANTOS-Herrera, Renato pursuant to subpoenas.

16. On March 30, 2022, your affiant advised Assistant United States Attorney Arnold B. Corsmeier of the foregoing facts and he authorized criminal prosecution of SANTOS-Herrera, Renato for transporting aliens unlawfully present in the United States. He also authorized applications for material witness warrants for BENITEZ-Coronel, Jorge, ZHINA-Arpi, Karina, MORALES-Hernandez, Limbano, and MORALES-Morales, Daniel.

17. Based upon the foregoing facts, your affiant believes there is probable cause to establish that on March 29, 2022, SANTOS-Herrera, Renato, transported aliens unlawfully present in the United States, for the purpose of private financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii) and (a)(1)(B)(i), and that BENITEZ-Coronel, Jorge, ZHINA-Arpi, Karina, MORALES-Hernandez, Limbano, and MORALES-Morales, Daniel are material witnesses for whom material witness arrest warrants should be issued, pursuant to Title 18, United States Code, Section 3144.

Joseas R. Montes, Border Patrol Agent
United States Border Patrol
Jacksonville, Florida